UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
LUIS RAMOS,                                      :

                    Petitioner,       :

          -against-                           :         **REPORT AND RECOMMENDATION**

JOSEPH T. SMITH,                            :         14-CV-8773 (PKC) (KNF)

                   Respondent.    :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE P. KEVIN CASTEL, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Luis Ramos ("Ramos") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted second-degree murder. Ramos claims that the verdict was against the weight of the evidence. The respondent opposes the petition.

In the early morning of January 15, 2009, Ramos ordered a beer form Laura Guzman ("Guzman"), a bartender at Maribella's Bar and Restaurant. In a loud voice, he was complaining to the restaurant staff that his friend, who was at the bar, had lost his jacket and demanded that the restaurant pay for it. Pedro Reyes ("Reyes"), the manager of the restaurant, approached Ramos and his friend and explained that the restaurant was not responsible for the jacket. Ramos and his friend walked to the restaurant's rear bathroom. Suspecting that drugs were involved, Reyes followed them to the bathroom, where his suspicion was confirmed. Accompanied by Manuel "Flaco" Romano ("Flaco"), a bouncer, Reyes confronted Ramos and his friend about the drugs and asked them to leave the restaurant. Ramos returned to the bar, removed a black jacket he was wearing and threatened that "the party is going to end," which

Reyes, Flaco and Guzman heard. Flaco noticed that, as Ramos removed his jacket, he secured a small blade between his fingers. Flaco retrieved a bat from the DJ booth and ordered Ramos to leave. Ramos stood up and raised his fist at Flaco in a threatening manner. Flaco swung the bat under Ramos's armpit. Ramos left the restaurant, but returned 30-45 minutes later armed with two guns and wearing a black jacket, a hat and a "hoody." He demanded to see Flaco. Reyes blocked Ramos from entering the restaurant and refused to summon Flaco. Ramos removed two guns from his jacket pocket, extended his arms, pointed the guns at Reyes's face and fired. Reyes collapsed. Flaco, who saw the shooting form the DJ booth, pursued Ramos. By the time police arrived on the scene, Ramos had disappeared into a dark alley. Guzman, who heard the shooting, ran for cover. From her hiding place, Guzman saw Ramos looking inside the bar "with the guns and pistol up." Several hours later, Detective Manuel Perez secured surveillance footage of the attack. That night, after interviewing Guzman, Flaco and other witnesses, Detective Timothy Donovan conducted a line-up identification, at which time Guzman identified Ramos as the shooter.

     A Bronx County grand jury indictment charged Ramos with an attempted second-degree murder and several other offenses. Ramos made a pertinent motion for an order suppressing the identification evidence. In March 2011, a hearing was held, pursuant to Dunaway v. New York, 442 U.S. 200, 99 S. Ct. 2248 (1979), United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967) and People v. Rodriguez, 79 N.Y.2d 445, 583 N.Y.S.2d 814 (1992), to determine the admissibility of the identification testimony. The court denied Ramos's suppression motion, finding that the lineup identification procedure used to identify Ramos was not suggestive. The court also found that eyewitnesses to the shooting were sufficiently familiar with Ramos long before the identification procedures were conducted, and that one witness had an independent

source for an in-court identification of Ramos.  Ramos proceeded to trial and the jury convicted him for attempted second-degree murder.  He was sentenced to a determinate imprisonment term of 22 years, followed by five years of post-release supervision.

Ramos appealed from the judgment of conviction, claiming that his: (1) verdict was against the weight of the evidence; and (2) sentence was excessive.  On January 28, 2014, the New York Supreme Court, Appellate Division, First Department affirmed the judgment of conviction, finding that: (a) "[t]he verdict was not against the weight of the evidence"; (b) no basis existed "for disturbing the jury's determinations concerning identification and credibility.  Defendant was identified by three witnesses, each of whom knew defendant from prior occasions"; and (c) no basis existed for reducing the sentence.  People v. Ramos, 113 A.D.3d 543, 979 N.Y.S.2d 515 (App. Div. 1st Dep't 2014).  On May 6, 2014, the New York Court of Appeals denied leave to appeal.  See People v. Ramos, 23 N.Y.3d 967, 988 N.Y.S.2d 574 (2014).  This petition followed.

In his petition, Ramos contends the following:

> In this identification case, petitioner . . . was wrongly convicted by a jury.  There were marked discrepancies between the physical appearance of the assailant and petitioner[.]  The two varied in size and height.  Petitioner states that there was no evidence linking to the alleged crime.  No gun powder residue test conducted on petitioner nor was a firearm retrieved from petitioner.  The prosecutor releyd [sic] heavily on eye witness testimony which was discredited at trail [sic], and a video of the alleged altercation at the bar, which clearly states that the assailant in the video tape footage is clearly someone else other than the petitioner.  The assailant was said to have been physically injured in the face and hit by a baseball bat! [sic] in the rib-cage area, Yet [sic] the petitioner was arrested soon thereafter and was presented with visable[1] [sic] or facial injuries allegedly inflicted by the bars [sic] DJ/Bouncer to assailant.

---

[1] The Court assumes that Ramos meant to state that he had "no visible" or facial injuries when he was arrested.

The respondent contends that Ramos's claim that the verdict was against the weight of the evidence is not cognizable in a federal habeas corpus proceeding, and Ramos provided no new evidence to support his contention that he was not the shooter. According to the respondent, should the court interpret Ramos's claim as one of insufficient evidence, that claim should be denied as unexhausted, procedurally defaulted and meritless. The respondent contends that, although Ramos, in his direct appeal, "briefly cited to *Jackson v. Virginia*, 443 U.S. 307 (1979), and in passing claimed, at the end of the weight of the evidence argument, that '[i]n addition, the People failed to prove the crime beyond a reasonable doubt,' he did not explicitly challenge the legal sufficiency of the evidence supporting his conviction," depriving the court of an opportunity to consider that claim. To the extent that Ramos is claiming he is innocent as a mechanism to overcome the procedural bar to his claim, he provided no new evidence in support of that claim. The respondent also contends that Ramos's insufficient evidence claim is meritless. At trial, the jury heard from the victim and two eyewitnesses who observed Ramos at the restaurant where the shooting occurred, before the incident, and knew him as a regular patron. Moreover, video surveillance footage was shown to the jury to demonstrate the sequence of events leading to the shooting, and each witness narrated the sequence of events that was consistent with the other witnesses' testimony. The state court's finding that Ramos was identified by three witnesses, each of whom knew him from prior occasions, is presumed correct. The respondent asserts that sufficient evidence supported the verdict.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

4

>the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08, 120 S. Ct. at 1520. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). AEDPA requires a petitioner to exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(a)(2).

***Verdict Is Against the Weight of the Evidence***

"[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993). "In the Federal courts . . . it is well settled that upon habeas corpus the court will not weigh the evidence . . . ." Hyde v. Shine, 199 U.S. 62, 84, 25 S. Ct. 760, 764 (1905).

5

Since federal habeas courts do not weigh the evidence, Ramos's claim that the state court jury's verdict is against the weight of the evidence is not cognizable in this proceeding.

*Insufficient Evidence*

"[A] federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt." Herrera, 506 U.S. at 401, 113 S. Ct. at 861. In determining whether a conviction is supported by sufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

The state court's finding that Ramos was identified by three witnesses, each of whom knew him from prior occasions is presumed correct, and Ramos failed to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). The witnesses who knew Ramos testified consistently that, prior to the shooting, they saw Ramos at the bar with his friend when he demanded loudly that the restaurant pay for his friend's jacket. Each witness observed Ramos and his friend go to the bathroom and Reyes, accompanied by Flaco, confront Ramos and his friend. Each witness heard Ramos threaten that he was going to "end the party." Flaco noticed that Ramos had a small blade, and used a bat to neutralize the imminent attack. The surveillance footage corroborated what the witnesses saw and heard, and captured Ramos's exit from the restaurant as well as his return sometime later. Reyes observed Ramos point the guns at his face and shoot. Flaco observed the shooting from the DJ booth. Guzman heard the shooting, ran for cover and saw Ramos looking inside the bar "with the guns and pistol up." The trial record demonstrates that sufficient evidence exists to support the verdict. Accordingly,

granting habeas corpus relief on this claim is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 1020, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
June 30, 2015

Copy mailed to:

Luis Ramos

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

7